IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

VS.                          CASE NO. 2:16-CR-20031-PKH-MEF-1

JASON LEE PYLES                                                                              DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on September 30, 2019. (ECF No. 46). The Government filed its response on October 18, 2019. (ECF No. 50). Petitioner filed a traverse to the Government's response on November 8, 2019 (ECF No. 52) and a Supplemental Brief (ECF No. 54) on January 23, 2020. An evidentiary hearing was held on March 5, 2021. The matter is ready for report and recommendation.

### I.     Background

On August 9, 2016, a two count Indictment was returned against Defendant, Jason Lee Pyles ("Pyles"), charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One), and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two). (ECF No. 1). Pyles was arrested on August 22, 2016 (ECF No. 14), and he appeared for arraignment on September 7, 2016. (ECF No. 10). The Court appointed Anna Williams ("Williams"), Assistant Federal Public Defender, to represent Pyles, and he entered a not guilty plea to the Indictment. (*Id.*; Text Only Order entered September 7, 2016). A jury trial was scheduled on November 7,

2016.  (ECF No. 13).

A continuance was granted at Pyles' request, and the trial date was rescheduled on December 12, 2016.  (ECF No. 15; Text Only Order entered on October 21, 2016).  Williams then filed a Motion in Limine for Pyles on November 14, 2016, in which she sought to prevent the Government from introducing the Arkansas waiver of revocation hearing form signed by Pyles on June 20, 2016.  (ECF No. 16).  The motion was denied on November 18, 2016.  (ECF No. 18).

On November 29, 2016, Pyles appeared with counsel before the Hon. P. K. Holmes, III, Chief U. S. District Judge, for a change of plea hearing.  (ECF No. 19).  A written Plea Agreement (ECF No. 20) was presented to the Court, and Pyles pleaded guilty to Count One of the Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (ECF Nos. 19, 74).  The Court accepted the guilty plea and ordered a presentence investigation.  (*Id*.).

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on March 2, 2017.  (ECF No. 22).  On March 8, 2017, the Government advised that it had no objections to the initial PSR.  (ECF No. 24).  On March 16, 2017, Pyles advised that he had seven objections to the initial PSR, including an objection to the two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for the instant offense involving three firearms, an objection to his classification as an Armed Career Criminal, and other objections that did not affect the guidelines calculation.  (ECF No. 27).  The Probation Officer addressed these objections in an Addendum to the PSR, removing the two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A), because one of the firearms was an antique, but taking no action on the objection regarding Pyles' status as an Armed Career Criminal.  (ECF No. 28-1).

On March 29, 2017, a final PSR was submitted to the Court.  (ECF No. 28).  Because Pyles

committed the instant offense after being convicted of at least two felony convictions of either a crime of violence or controlled substance offense, the final PSR determined that Pyles' conduct called for a base offense level of 24. (ECF No. 28, ¶ 28). Because he used or possessed any firearm or ammunition in connection with another felony offense, a four-level enhancement was made pursuant to U.S.S.G. § 2K2.1(b)(6)(B), resulting in an adjusted offense level of 28. (*Id.*, ¶¶ 29, 33). Since Pyles was subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) as an armed career criminal, his offense level was increased to level 34 under U.S.S.G. § 4B1.4(b)(3)(A). (*Id.*, ¶ 34). After a three-level reduction for acceptance of responsibility was made, his total offense level was determined to be 31. (*Id.*, ¶¶ 35-37).

Pyles' extensive criminal history resulted in a criminal history score of 24, placing him in criminal history category VI. (ECF No. 28, ¶¶ 67-69). Further, pursuant to U.S.S.G. § 4B1.4(c), the applicable criminal history category is VI because Pyles is an armed career criminal. (*Id.*, ¶ 70). The statutory minimum term of imprisonment for the offense of conviction is 15 years, and the statutory maximum term of imprisonment is life. (*Id.*, ¶ 101). Based upon a total offense level of 31 and a criminal history category of VI, Pyles' advisory Guidelines range was determined to be 188 to 235 months imprisonment. (*Id.*, ¶ 285).

Pyles appeared for sentencing on May 10, 2017. (ECF No. 31). The Government presented three exhibits relating to Pyles' 2014 state court conviction for aggravated assault on a family member, including the Criminal Information, Sentencing Order, and Plea Colloquy. (*Id.*). The Court noted that, at first, Pyles argued the Arkansas statute for the offense was divisible and the *Shepard*[1] documents left it ambiguous, but given the plea colloquy from that conviction, Pyles agreed the ambiguity was resolved, leaving only the question of whether the offense is a "violent

---

1 *Shepard v. United States*, 544 U.S. 13 (2005).

felony" under the ACCA. (ECF No. 39, pp. 3-4). In addressing that issue, the Court found that the two means by which force can be used under the Arkansas statute in question[2] both involve the use of physical force, which meets the definition of the force clause under the ACCA. (*Id.*, p. 6). The Court also observed that one can only be convicted under that statute if one acts "purposely," which the Court found to be sufficient to meet the intent required. (*Id.*, pp. 5-7). Pyles' objection to the ACCA enhancement was overruled, and the final PSR was adopted without any change. (*Id.*, p. 7).

The Court determined that Pyles' total offense level was 31, and his criminal history score of 24 placed him in category VI, resulting in an advisory Guidelines range that was 188-235 months imprisonment. (ECF No. 39, pp. 8-9). The Government argued for a sentence of 188 months at the bottom of the guidelines range. (*Id.*, p. 9). Arguing that Pyles' criminal history was "fueled by drugs," Williams argued for imposition of the mandatory minimum of 180 months. (*Id.*, pp. 10-11). Agreeing that Pyles' criminal history was related to his drug addiction, the Court varied downward to impose the mandatory minimum sentence of 180 months imprisonment, three years supervised release, no fine, and a $100 special assessment. (*Id.*, pp. 13-14). Judgment was entered by the Court on May 10, 2017. (ECF No. 32).

Pyles timely pursued a direct appeal to the Eighth Circuit Court of Appeals. (ECF No. 34). On appeal, Pyles argued that this Court erred in finding his prior conviction for aggravated assault of a family member, in violation of Ark. Code Ann. § 5-26-306(a)(3), was a "violent felony" under the ACCA. (ECF No. 43-2, p. 2). The Eighth Circuit rejected that argument, finding that "the force element of a § 5-26-306(a)(3) violation – impeding respiration or blood circulation by applying pressure on the throat or neck or by blocking the nose or mouth – necessarily requires

---

[2] Ark. Code Ann. § 5-26-306(a)(3).

the use of violent force as defined in *Johnson*."³  (*Id.*, p. 3).  The Eighth Circuit also concluded that the mens rea required for a violation of § 5-26-306(a)(3) – that one act "purposely" – was sufficient for Pyles' conviction under this statute to constitute a violent felony under the ACCA. (*Id.*, pp. 3-4).  Pyles' conviction and sentence were affirmed.  (*Id.*, p. 4).  The Eighth Circuit's Mandate issued on May 29, 2018.  (ECF No. 43).  Pyles' Petition for a Writ of Certiorari filed with the United States Supreme Court was denied on October 3, 2018.  (ECF Nos. 44, 45).

On September 30, 2019, Pyles filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion").  (ECF No. 46).  The motion raises two grounds for relief: (1) actual innocence because his prior offenses should not have been used to enhance his sentence under the ACCA, and (2) ineffective assistance of counsel for not arguing this issue.  (*Id.*, pp. 4-5).  More specifically, Pyles contends that his prior state court conviction on May 17, 1996, for possession with intent to deliver methamphetamine, should not have been used as a predicate offense under the ACCA because it involved only a small amount (.23 mg) of methamphetamine for personal use, was not a "serious drug offense," and that AFPD Williams was ineffective for failing to argue this point.  (ECF No. 47, pp. 6-11).

The United States' response in opposition to the motion was filed on October 18, 2019. (ECF No. 50).  Pyles filed a traverse on November 8, 2019.  (ECF No. 52).  Given leave to do so, he filed a supplemental brief on January 23, 2020.  (ECF No. 54).

The undersigned held an evidentiary hearing on March 5, 2021.  (ECF No. 75).  Pyles testified on his own behalf, and the Government called Daniel Burnett, a United States Probation Officer, and AFPD Williams as witnesses.  (*Id.*).

---

3 *Johnson v. United States*, 559 U.S. 133, 140 (2010).

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Pyles' motion, the files and records of this case, and the evidence presented at the evidentiary hearing conclusively shows that Pyles is not entitled to relief, and the undersigned recommends the denial and dismissal of his § 2255 motion with prejudice.

### A. Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689.

Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

### B. Ground One: Actual Innocence Under the ACCA

Pyles first asserts that he is actually innocent of the enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), arguing that his prior offense conduct should not have been used to enhance his sentence under the ACCA. (ECF No. 46, p. 4; ECF No. 47, pp. 6-9). Specifically, Pyles contends his prior conviction for possession of methamphetamine with intent to deliver should not have been used to support the ACCA enhancement.[4] He claims this offense involved only .23 mg of methamphetamine, which was "for personal use," and simple

---

4 Pyles refers to the date of May 17, 1996, for this prior conviction (ECF No. 47, p. 6), but from a review of the record, it appears Pyles is referring to his May 17, 1995, conviction for possession of methamphetamine with intent to deliver in the Circuit Court of Sebastian County, Arkansas, Greenwood District, Second Division, Docket No. CR-94-44-G. (ECF No. 28, ¶ 51; Government Exhibit 3).

possession does not support enhancement under the ACCA as a "serious drug offense." (ECF No. 47, pp. 6, 9). In response, the Government argues that this claim is procedurally barred because Pyles failed to raise it on direct appeal. (ECF No. 50, p. 4).

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) (internal citations omitted). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted). The distinction between direct appeal and collateral attack stems from the importance of the finality of judgments. *Id*.

The failure to raise an issue on direct appeal ordinarily constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000); *Swedzinski v. United States*, 160 F.3d 498, 500 (8th Cir. 1998); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997). This rule applies whether the conviction was obtained through trial or through the entry of a guilty plea. *E.g.*, *United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998). A defendant may surmount this procedural

default only if he "can show both (1) cause that excuses the default, and (2) actual prejudice from the errors asserted." *Matthews*, 114 F.3d at 113; *Apfel*, 97 F.3d at 1076. "'[C]ause' in the formula 'cause and prejudice' means some impediment to making an argument" at the time of the direct appeal. *Turner v. United States*, 693 F.3d 756, 758 (7th Cir. 2012); *cf. McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (in successive writ cause and prejudice analysis "[f]or cause to exist, the external impediment, whether it be Government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim"). Even constitutional or jurisdictional claims not raised on direct appeal are procedurally defaulted unless the petitioner can demonstrate either cause for the default and actual prejudice, or actual innocence. *Bousley*, 523 U.S. at 622; *United States v. Bailey*, 235 F.3d 1069, 1071-72 (8th Cir. 2000).

Following his guilty plea and sentencing in this case, Pyles did pursue a direct appeal, but he did not raise the claim he now asserts. Instead, he argued that his prior felony conviction for aggravated assault of a family member, in violation of Ark. Code Ann. § 5-26-306(a)(3), was not a "violent felony" under the ACCA. (ECF No. 43-2, p. 2). The Eighth Circuit rejected that argument and affirmed his conviction and sentence. (ECF No. 43-2).

Having failed to challenge on direct appeal the use of his prior conviction in No. CR-94-44-G for possession of methamphetamine with intent to deliver as a predicate offense under the ACCA, Pyles has procedurally defaulted that issue and may not raise it for the first time in this § 2255 proceeding, unless he can establish cause and prejudice, or actual innocence. As this issue is intertwined with Pyles' claim of ineffective assistance of counsel, it will be discussed in the following section.

### C. Ground Two: Ineffective Assistance of Counsel

Pyles' second ground for relief is his claim that counsel was constitutionally ineffective by

failing to argue that his prior conviction in No. CR-94-44-G for possession of methamphetamine with intent to deliver was not a "serious drug offense" under the ACCA. (ECF No. 47, pp. 10-11).

"To establish ineffective assistance of counsel, both as an independent claim and as cause and prejudice to excuse a procedural default, [Pyles] must show that 'counsel's performance was deficient,' and 'that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable.'" *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). Acknowledging that ineffective assistance of counsel may constitute cause and prejudice to overcome a procedural default, *see Boysiewick v. Schriro*, 179 F.3d 616, 619 (8th Cir. 1999), the Government argues there is neither deficient performance nor prejudice in this case. (*Id.*, pp. 6-11). For the reasons discussed below, the undersigned agrees.

The essence of Pyles' claim is that the facts underlying his conviction in No. CR-94-44-G involved only .23 mg of methamphetamine, a small "personal use" quantity, and there was "not any other evidence found to state that Mr. Pyles was distributing drugs." (ECF No. 47, pp. 6-9). He then faults AFPD Williams for not arguing this claim. The record does not support Pyles' claim.

On September 12, 1994, an Information was filed in the Circuit Court of Sebastian County, Arkansas, Greenwood District, No. CR-94-44-G, charging Pyles with the offense of possession of methamphetamine with intent to deliver, in violation of Ark. Code Ann. § 5-64-401, a Class Y Felony. (Government Exhibit 2). Following a jury trial, Pyles was found guilty and convicted of possession of methamphetamine with intent to deliver, in violation of Ark. Code Ann. § 5-64-401, a Class Y Felony, and he was sentenced to serve a term of 10 years in the Arkansas Department of Correction. (Government Exhibit 3).

A "serious drug offense" is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(a)(ii). To determine whether a prior conviction qualifies as a "serious drug offense" under the ACCA, courts apply a categorical approach and "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). "When a statute criminalizes both qualifying and non-qualifying conduct, courts apply a modified categorical approach and may consider the charging document, plea agreement, plea-colloquy transcript, or 'some comparable judicial record of this information' to determine under which portion of the statute the conviction arose." *Shepard v. United States*, 544 U.S. 12, 26 (2005). *See also United States v. Bynum*, 669 F.3d 880, 885 (8th Cir. 2012); *United States v. Meux*, 918 F.3d 589, 591 (2019) ("To determine whether a prior conviction meets this definition [of a predicate offense], 'courts look to the elements of the crime of conviction, not the underlying facts.'" (quoting *United States v. Boman*, 873 F.3d 1035, 1040 (8th Cir. 2017)).

Because Ark. Code Ann. § 5-64-401(c) (1994) criminalizes simple possession of a controlled substance, which does not meet the requirements of 18 U.S.C. § 924(e)(2)(a)(ii), the statute is overbroad. The Eighth Circuit has, however, ruled that the statute is divisible. *Meux*, 918 F.3d at 591. So, the question presented is which portion of Ark. Code Ann. § 5-64-401 (1994) Pyles was convicted of in No. CR-94-44-G.

Ark. Code Ann. § 5-64-401(a) (1994) provides in pertinent part:

> (a) Except as authorized by subchapters 1-6 of this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance.
>
>    (1)   Any person who violates this subsection with respect to:

> (i) A controlled substance classified in Schedules I or II, which is a narcotic drug or methamphetamine, and by aggregate weight, including adulterants or diluents, is less than twenty-eight grams (28 g.), is guilty of a felony and shall be imprisoned for not less than ten (10) years nor more than forty (40) years, or life, and shall be fined an amount not exceeding twenty-five thousand dollars ($25,000). For all purposes other than disposition, this offense is a Class Y felony.

Regarding simple possession of a controlled substance, Ark. Code Ann. § 5-64-401(c) (1994) provides:

> (b) It is unlawful for any person to possess a controlled substance or counterfeit substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this chapter. Any person convicted of a first offense for violation of this subsection is guilty of a Class A misdemeanor. Provided any person who is convicted of a second offense for a violation of this subsection is guilty of a Class D felony. Provided, any person who is convicted of a third or subsequent offense for violation of this subsection shall be guilty of a Class C felony. Provided, however, any person who unlawfully possesses a controlled substance listed under Schedules I or II of subchapters 1-6 of this chapter shall be guilty of a Class C felony.

Here, while the Information (Government Exhibit 2) does not specify under which portion of Ark. Code Ann. § 5-64-401 Pyles was charged, it does clearly state that Pyles was charged with possession of methamphetamine with intent to deliver, a Class Y felony (for which he faced imprisonment for not less than 10 years nor more than 40 years, or life), not simple possession of a controlled substance, which at worst would be a Class C felony. Thus, the one *Shepard* document presented to the Court does make clear that Pyles was charged with a "serious drug offense," as that term is defined in 18 U.S.C. § 924(e)(2)(a)(ii). Consistent with the charge set forth in the

Information, the Judgment and Commitment Order dated May 17, 1995,[5] (Government Exhibit 3) indicates that Pyles was found guilty at jury trial and convicted of possession of methamphetamine with intent to deliver, a Class Y felony, and he was sentenced to 10 years in the Arkansas Department of Correction. The Eighth Circuit has held that a conviction of possession with intent to deliver a controlled substance, under Ark. Code Ann. § 5-64-401(a), is a serious drug offense. *Meux*, 918 F.3d at 591. Accordingly, Pyles' conviction in No. CR-94-44-G for possession of methamphetamine with intent to deliver is a "serious drug offense" and serves as a predicate for enhancement under the ACCA.

The next question is whether AFPD Williams was deficient in failing to raise this argument. The record clearly shows she was not.

At this point, some discussion of the testimony presented at the evidentiary hearing is necessary. Much of Pyles' testimony at the evidentiary hearing held on March 5, 2021, centered on his denial of the facts supporting his conviction for knowingly possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1), and not the issues presented in this § 2255 proceeding. In contrast to his sworn representations in the Plea Agreement (ECF No. 20) and at his change of plea hearing (ECF No. 74), Pyles denied any knowledge of the drugs or firearms located at his residence. He stated that he thought "the guns had to be on you," that he never touched the guns or knew they were there, and that "I never had a firearm on me." He mentioned the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), and asserted that he thought being a felon in possession of a firearm only applied to one who had possession of a firearm while committing a felony offense. Such testimony was simply not credible, and he eventually acknowledged that, "I knew I couldn't possess a firearm." He also admitted that he had

---

5 The Judgment and Commitment Order was filed of record on June 19, 1995.

been previously convicted of being a felon in possession of a firearm. (Government Exhibit 4).

When he did get around to discussing his conviction in No. CR-94-44-G, he again complained that the offense involved only .23 mg of methamphetamine, and he suggested that the Arkansas Court of Appeals was split three to three. His conviction in No. CR-94-44-G was, in fact, affirmed by the Arkansas Court of Appeals, *en banc*, with three judges in the majority opinion and three judges concurring in the result, but for a different reason. *See Pyles v. State*, 55 Ark. App. 201 (1996). Moreover, contrary to his assertion that the amount of methamphetamine involved in that offense was only a small quantity for personal use and there was no other evidence of distribution, the appellate decision noted that Pyles had possession of a film cannister which contained "three small packets of what was later identified as methamphetamine," *Pyles*, 55 Ark. App. at 203, and on cross-examination during the evidentiary hearing, Pyles admitted there was a "drug ledger" introduced during his trial, so there was other evidence of possession of methamphetamine with intent to deliver.

AFPD Williams testified that she discussed Pyles' prior convictions with him and how they factored into the ACCA analysis. She explained that the law was clear regarding Pyles' prior drug convictions, including No. CR-94-44-G, and in her view those convictions would have clearly counted as predicate offenses under the ACCA. She did feel, however, they could challenge his prior conviction for aggravated assault of a family member as a predicate offense under the ACCA, which they did both at sentencing and on direct appeal. She stated that Pyles agreed with this approach, and he never urged her to challenge his prior conviction in No. CR-94-44-G for possession of methamphetamine with intent to deliver. Notably, Pyles did not dispute this testimony during the evidentiary hearing, stating only that he thought she should have challenged whether No. CR-94-44-G was a "serious drug offense," but blaming his own ignorance for failing

to ask her to do so. The law is clear, however, that a petitioner's pro se status, limited education, below-average intelligence, or any unfamiliarity with the intricacies of the law or legal procedure are not sufficiently *external* to constitute cause overcoming a procedural default. *See Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992); *Stanley v. Lockhart,* 941 F.2d 707, 710 (8th Cir. 1991); *McKinnon v. Lockhart,* 921 F.2d 830, 832 n.5 (8th Cir. 1990); *Vasquez v. Lockhart,* 867 F.2d 1056, 1058 (8th Cir. 1988); and *Smittie v. Lockhart,* 843 F.2d 295, 298 (8th Cir. 1988).

All this testimony, though, concerns the underlying facts of Pyles' prior conviction in No. CR-94-44-G, but to determine whether a prior conviction meets the ACCA's definition of a "serious drug offense," courts must look *only to the elements of the crime of conviction, not the underlying facts*. *Meux*, 918 F.3d at 591. And, as discussed above, Pyles' conviction in No. CR-94-44-G for possession of methamphetamine with intent to deliver, in violation of Ark. Code Ann. § 5-64-401(a), constituted a "serious drug offense" under the ACCA, so AFPD Williams' failure to make a meritless argument to the contrary cannot serve as the basis for a claim of ineffective assistance of counsel. *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994); *Haney v. United States*, 962 F.3d 370, 374 (8th Cir. 2020) (where the sentencing argument had no merit, counsel was not ineffective in declining to advance it).

Accordingly, Pyles has not shown that AFPD Williams performed deficiently by failing to challenge for ACCA purposes his conviction for possession of methamphetamine with intent to deliver in No. CR-94-44-G, or that the results of the proceeding would have been different had she done so, and he has procedurally defaulted his claim that he is actually innocent of his ACCA enhanced sentence.

### III.   No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000).

For the reasons discussed above, Pyles has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### IV.   Conclusion

It is recommended that Pyles' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 46), as supplemented, be **DISMISSED with PREJUDICE**. It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of May 2021.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE